**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

KONSTANTINE PANTAS,

      Plaintiff,

vs.                                                     Case No. 6:12-cv-227-Orl-37KRS

GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

      Defendant.

**ORDER**

This cause is before the Court on the following:

1. Defendant, Guardian Life Insurance Company's, Motion for Summary Judgment as to Counts I and II of Plaintiff's Complaint (Doc. 61), filed February 1, 2013; and

2. Plaintiff's Motion for Final Summary Judgment and Memorandum of Law in Support Thereof (Doc. 62), filed February 1, 2013; and

3. Plaintiff's Opposition and Response to Defendant's Motion for Summary Judgment as to Counts I and II of Plaintiff's Complaint and Memorandum of Law in Support (Doc. 89), filed March 1, 2013; and

4. Defendant, Guardian Life Insurance Company of America's, Response to Plaintiff's Motion for Summary Judgment (Doc. 90), filed March 4, 2013; and

5. Defendant, Guardian Life Insurance Company of America's, Reply to Plaintiff's Opposition and Response to Defendant's Motion for Summary Judgment (Doc. 91), filed March 15 2013; and

6. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. 92), filed March 18, 2013.

**BACKGROUND**

Plaintiff, Konstantine E. Pantas, applied for benefits under a disability income insurance policy issued by the Defendant, Guardian Life Insurance Company of

America. (Doc. 68-1, p. 80; Doc. 70-1, p. 41.) Guardian paid out some benefits under the policy but, after becoming suspicious of Pantas' disability claim, asked him to submit to a neuropsychological examination. (Doc. 2, ¶ 10; Doc. 61, ¶ 18; Doc. 61-6, pp. 1–3; Doc. 68-2, p. 80.) Pantas balked at submitting himself to an unconditional neuropsychological exam (Doc. 61, ¶ 17), and Guardian refused to conduct the examination under the conditions that it be video recorded and the raw data be released to Pantas (Doc. 2 at ¶ 19; Doc. 68-2, p. 10-11). Caught in a standoff, Guardian stopped payment, and this lawsuit ensued.

The parties filed cross motions for summary judgment, each side contending there are no disputes of material fact concerning the application of the policy to the examination standoff or Pantas' entitlement to benefits under the policy.

## STANDARDS

Summary judgment is appropriate only if the movant can show that there are no genuine disputes of material fact. *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden to show that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant discharges his burden by showing that there is "an absence of evidence to support the non-moving party's case." *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) The Court reviews evidence "in the light most favorable to the nonmoving party." *Fennell*, 559 F.3d at 1216.

If the movant satisfies this initial burden, the burden then shifts to the non-movant to identify specific facts within the record to show that there is a genuine issue for trial.

*Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The non-movant must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). "[I]f factual issues are present, the court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). In the context of cross-motions for summary judgment, "the denial of one does not require the grant of another." *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008).

**DISCUSSION**

Guardian insists that Pantas is contractually obligated to submit to the requested neuropsychological exam. Guardian posits that the issue is cut and dry: under the terms of the policy Pantas must submit to a neuropsychological evaluation conducted in a pristine examination environment without video recording. Pantas contends quite the opposite. He argues that he showed up for the neuropsychological examination but that Guardian's neuropsychologist would not administer it because of the presence of a video recorder. Thus, in Pantas' view, he did not materially breach the policy.

The Court starts by construing the policy. It provides, under the heading "Claim Provisions," as follows:

**Physical Examination**
We shall have the right and opportunity to have you medically examined at our expense when and as often as we may reasonably require while you claim to be disabled under this policy.

**Legal Actions**
No one can bring an action at law or in equity under this policy until 60 days after written proof has been furnished as required by this policy. In no case can an action be brought after the expiration of the applicable

3

statute of limitations from the time the written proof is required to be given. (Doc. 70-1, p. 24.) The meanings of these provisions are plain. *See Gossett & Gossett, P.A. v. Mervolion*, 941 So. 2d 1207, 1210 (Fla. 4th DCA 2006) ("In construing a contract, the intention of the parties is ascertained from the language used in the instrument and the object to be accomplished . . . ."). Guardian can request that Pantas submit to a medical examination "when and as often" as necessary so long as Pantas "claim[s] to be disabled." The policy also only bars lawsuits during the first 60 days after Guardian is furnished with written proof of a claim or after the expiration of the applicable statute of limitations. It does so at no other time.

It is undisputed that Pantas claimed to be disabled under the policy and submitted to Guardian written proof of his disability. It is also undisputed that Guardian asked to have him examined pursuant to the policy.[1] The parties contest whether Guardian's request that Pantas undergo an examination on its terms was permitted by the policy. Assuming the request was reasonable and made in good faith,[2] Pantas' refusal to submit to Guardian's requested examination could be construed as a material breach. *See, e.g.*, *Fernandez v. Vazquez*, 397 So. 2d 1171, 1174 (Fla. 3d DCA 1981) (noting that a party's good faith cooperation is an implied condition to performance of a contract, and that "where that cooperation is unreasonably withheld, the recalcitrant

---

[1] Pantas' argument that the neuropsychological examination was not authorized by the policy because it was not a physical examination or a medical examination is without merit as it is based on a strained and overly technical interpretation of the terms "physical" and "medically." *See, e.g.*, *Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. 3d DCA 1999) (noting that "the principle of contract interpretation which requires that the words used by the parties must be given their plain and ordinary meaning.").

[2] The neuropsychologist who was to administer the examination objected to the presence of the video recorder based on her professional opinion that the recorder would influence the reliability of the examination.

4

party is estopped from availing herself of her own wrongdoing").

Guardian contends that Pantas' breach would release it from its obligation to pay benefits under the policy because the examination provision was a condition precedent. Pantas argues that the policy's examination provision is not a condition precedent but rather is a condition subsequent that requires Guardian to show that it was prejudiced in order to cease paying benefits. For this last argument Pantas relies on *State Farm Mutual Automobile Ins. Co. v. Curran*, 83 So. 3d 793 (Fla. 5th DCA 2012), an opinion that the Florida Supreme Court is currently reviewing because its holding conflicts with the opinions of Florida's other intermediate appellate courts. Guardian disputes the validity of the holding in *Curran*, and disputes its applicability to the facts of this case.

Under Florida law, courts may not construe contract provisions to be conditions precedent "unless required to do so by the plain, unambiguous language" of the contract. *Cook v. Cook*, 94 So. 3d 683, 685 (Fla. 4th DCA 2012) (quoting *In re Estate of Boyar*, 592 So. 2d 341 (Fla. 4th DCA 1992)). Indeed, as a general rule, "conditions precedent are not favored." *Id.* The insurance policy in this case does not contain any limiting clause or phrase—such as "if", "provided that", or "on condition that"—that demonstrates an intent for the examination provision to be a condition precedent to performance. *See id.* In fact, the examination provision in this case reads more naturally as a cooperation clause than as a condition precedent, especially when it is read together with the "Legal Actions" provision of the policy which precludes suits only in two narrowly prescribed situations.

The cases identified by Pantas and Guardian, on the other hand, all contain both proof of loss or examinations provisions and broadly worded no-action clauses. *See Allstate Floridian Ins. Co. v. Farmer*, 104 So. 3d 1242, 1246 (Fla. 5th DCA 2013)

5

(construing an insurance contract containing a proof of loss requirement and a no-action clause); *Soronson v. State Farm Ins. Co.*, 96 So. 3d 949, 952 (Fla. 4th DCA 2012) (same); *State Farm Mut. Auto. Ins. Co. v. Curran*, 83 So. 3d 793, 803 n.6 (Fla. 5th DCA 2001) (policy provides that insured cannot bring an action against the insurer "until all terms of this policy have been met"); *Goldman v. State Farm Mut. Ins. Co.*, 660 So. 2d 300, 301 (2011) (policy provides that "no action shall be brought unless there has been compliance with the policy provisions"). The policies in those cases therefore are distinguishable from the policy at issue here, which does not require an insured to comply with all the provisions of the policy before filing suit but rather prevents the filing of a lawsuit only in two narrowly prescribed situations.

There is no question that the settled law in Florida is that a cooperation clause is a condition subsequent. *See, e.g.*, *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1217 (Fla. 1985). Where there has been a breach of a cooperation clause, "the insurer must show a material failure to cooperate which substantially prejudiced the insurer." *Id.* In other words, "[n]ot every failure to cooperate will release the insurance company" from the payment of benefits. *Ramos v. N.W. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976). Only "that failure which constitutes a material breach and subsequently prejudiced the rights of the insurer in defense of the cause" will cause such release. *Id.* The insurer must also show that it "exercised diligence and good faith in bringing about the cooperation of the insured and must show that it complied in good faith with the terms of the policy." *Id.* These issues—especially materiality and prejudice—are issues of fact "for the jury to settle." *Am. Fire & Cas. Co. v. Vliet*, 4 So. 2d 862, 863 (Fla. 1941).

Indeed, the record in this case is replete with disputed issues of fact. For example, Guardian advances several lines of evidence as to why it was reasonable for

6

it to reject Pantas' conditions for the neuropsychological examination; Pantas offers expert testimony that challenges the validity of Guardian's reasons. On another issue, Guardian says it was prejudiced by its inability to examine Pantas, but it chose to pay benefits to him previously without requiring that he sit for a neuropsychological examination.[3] Guardian advances reasons why it was reasonable and prudent for it to request an examination. Its change of heart, however, could have less charitable explanations as well, especially when the facts are viewed in the light most favorable to Pantas. Put simply, on this record Guardian has not shown an undisputed "material failure to cooperate" by Pantas or that his actions "substantially prejudiced the insurer." Pantas has certainly not shown the converse. Rather, these hotly disputed issues of fact preclude a grant of summary judgment in favor of either party.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion for Summary Judgment as to Counts I and II (Doc. 61) is **DENIED**.

2. Plaintiff's Motion for Final Summary Judgment (Doc. 62) is **DENIED**.

3. The parties shall be prepared to address at the pretrial conference whether the issues of material breach and prejudice should be bifurcated from the questions of Pantas' entitlement to disability benefits under the policy and the amount of those benefits. The parties' positions on

---

[3] Pantas' initial claim was evaluated based upon medical records, financial information and a review of that material by independent physicians and psychologists retained by Guardian.

bifurcation shall be included in the Joint Pre-Trial Statement.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 20, 2013.

_____
ROY B. DALTON JR.
United States District Judge

Copies:
Counsel of Record